```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

| | | |
|---|---|---|
| In re: Divine Tower | : | Case Nos.  2:04-cv-494 |
| International Corporation, | : | 2:04-cv-584 |
| | : | |
| Debtor, | : | JUDGE GRAHAM |
| | : | |
| | : | Chapter 11 |
| | : | |
| | : | Judge Caldwell |
| | : | (Case No. 02-55291) |

_____

| | | |
|---|---|---|
| Divine Tower International | : | |
| Corp., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. Pro. No. 04-02169 |
| | : | |
| Kegler, Brown, Hill & Ritter, | : | |
| Co., L.P.A., et al. | : | |
| | : | |
| Defendants. | : | |

ORDER

This case involves a dispute between Appolo Real Estate Investment Fund IV, LP and the law firm of Kegler, Brown, Hill & Ritter Co., L.P.A.  Appolo claims that it was misled by Kegler, Brown when it invested money in Divine Tower International Corp., which is now in bankruptcy.  The Court has issued several earlier orders relating to discovery issues, including an order dealing with the question of whether documents subpoenaed by Kegler, Brown from law firms representing Appolo - including the Columbus Law Firm of Schottenstein, Zox & Dunn - were protected by the

attorney-client privilege.  The case is currently before the Court to determine additional issues relating to that subpoena raised in a motion to compel production filed by Kegler, Brown on August 31, 2007 (doc. #80).

The motion to compel identifies three separate types of documents which, according to Kegler, Brown, the Schottenstein firm has improperly withheld: (1) documents "containing purely factual information" collected as a part of the Schottenstein firm's due diligence investigation; (2) the originals of documents, containing a correct date, to replace documents that were produced with incorrect dates and missing signatures; and (3) enclosures and attachments to which documents already produced make reference, but which were not attached to those documents when they were produced.  The Court will deal with each of these categories in turn.

I.

The first dispute revolves around the nature of documents which the Schottenstein firm withheld on grounds of privilege subsequent to this Court's April 10, 2007 order.  That order concluded that Appolo had not waived the attorney-client privilege it enjoyed with the Schottenstein firm simply by making fraud claims in this case.  In upholding the claim of privilege, however, the Court observed that factual information gathered by Appolo's attorneys, including the Schottenstein firm, "is both relevant and discoverable."  Order of April 10, 2007, at 5.  The privilege applied only to "what [the law firms] communicated to Appolo...."  Id.  The Court also concluded that if, as Kegler, Brown argued, the Schottenstein firm had failed to produce non-privileged documents, that failure "should be remedied forthwith."  Id.  Kegler, Brown asserts that the Schottenstein firm is still withholding more than 3,100 pages of documents and that these documents "readily appear to be factual in nature."

Admission to Compel, at 5. Those documents are described in more detail at pages 5-6 of the motion to compel.

The response to the motion to compel sheds some light on this issue. First, Appolo notes that, after receiving the motion, and without waiving any applicable privilege, it has produced a number of the documents at issue. <u>See</u> Memorandum in Opposition, at 7 n.2. Second, it states that the balance of the documents are "a draft or copy of essentially the same ultimate document," namely a report dated September 30, 1999 prepared by the Schottenstein firm and submitted to Appolo. <u>Id</u>. at 5. Because that document is itself a direct communication from attorney to client, Appolo contends that it is covered by the attorney-client privilege and that the Court's prior order did not direct it to produce that document.

Without having reviewed the document itself, it is somewhat difficult for the Court to determine whether Kegler, Brown's characterization of the document or Appolo's characterization is the more accurate. However, the Court will attempt to restate what it believes to be the applicable law concerning documents of this nature. If that does not assist the parties in resolving the producibility of this Report, it may be necessary either to order an *in camera* inspection of the document or to conduct a hearing.

Kegler, Brown is correct that it is entitled to learn, through discovery, all of the facts which the Schottenstein firm gathered as part of its due diligence inquiry. Presumably, it could accomplish that task through a combination of discovery devices. Kegler, Brown appears to have requested the Schottenstein firm to produce any documents which it either collected from third parties or generated internally, and these would be discoverable so long as the latter category of documents were not themselves communications from the Schottenstein firm to

Appolo or did not contain or reflect such communications.  A representative of the Schottenstein firm could also be deposed and could properly be asked to disclose what facts the Schottenstein firm learned through its due diligence efforts, regardless of whether those facts were communicated to Appolo.  The only area which would be placed off-limits by the attorney-client privilege would be questions to a representative of the Schottenstein firm asking about specific oral or written communications with Appolo, and documents which were themselves written communication between the Schottenstein firm and Appolo or which repeated or reflected such written or oral communications.

    To make these abstract principles somewhat more concrete, the Court is willing to assume, as the Schottenstein firm has represented, that after it collected information as part of the due diligence process, it prepared a report about the results of that investigation and submitted that report to Appolo.  The Court further assumes that it is the report itself, and only that report, which is being withheld on grounds of privilege.  Such a report would be privileged because it represents a direct communication from an attorney to a client about a matter concerning which the client has sought legal representation and advice.  Again, however, the Schottenstein firm could not refuse to produce other documents to which the report refers simply because those documents or excerpts from those documents were incorporated into the report.  Additionally, the Schottenstein firm could not refuse to answer questions at a deposition concerning what information it learned during the due diligence process even if  that information had been reiterated or summarized in one or more privileged communications to Appolo.  In the end, therefore, the non-production of the privileged document should not hinder Kegler, Brown from discovering exactly

4

what information the Schottenstein firm learned or was aware of through its due diligence process.

For these same reasons, representatives of Appolo could be asked the same types of questions and would have to testify truthfully as to what they knew about the transaction even if they learned that information from their attorneys' due diligence reports.  Similarly, however, they could not properly be asked to testify to the content of any communications from their attorneys, nor could they be required to produce in written form those communications.  In other words, there is no barrier to any type of discovery in which Kegler, Brown essentially asks: "Did you [Appolo or the Schottenstein firm] learn Fact A during the due diligence process?" even if the only written reference to Fact A is in a privileged communication.  On the other hand, it would not be proper to ask whether the Schottenstein firm communicated Fact A to Appolo, or Appolo learned Fact A as a result of such a communication, nor would it be proper to require production of any document in which Fact A was communicated between the parties.  Having said that, if the parties require further development of the record with respect to this particular document, they shall arrange a conference call with the Court to discuss the appropriate procedures.

## II.

The other two matters appear to be easily addressed and probably should not be the subject of motions practice.  With respect to incorrect dates having appeared on documents, according to both parties, the documents produced with incorrect dates were produced directly from an electronic database.  The database itself places the dates on the documents, and according to the Schottenstein firm, that feature of the electronic database cannot be disabled.  The Schottenstein firm contends that the way in which the documents were produced reflects the

way they were maintained in the ordinary course of business and that it has no further obligation to re-produce the documents without the erroneous dates.  It makes a similar argument with respect to missing attachments, contending that if the documents were produced in the ordinary course of business and did not have the attachments appended to them, it has no obligation to produce them in any other form.

In the Court's view, Kegler, Brown has the better of this argument, as set forth in its reply memorandum.  Presumably, somewhere there exist copies of these documents with correct dates, without erroneous computer-generated dates, and with proper attachments.  Even if these documents were at some point converted into electronic form and stored in an electronic database, it cannot be said that the hard copy originals are not also kept "in the ordinary course of business."  When such documents more accurately reflect the authentic documents in question, they should be produced in that form.  The same would be true of the original documents with attachments.  If, when the documents were scanned or placed into an electronic database, the attachments did not go with them, but the attachments are still maintained as part of a hard copy file, the hard copies of the documents should be produced with attachments.

The only argument which could be made in response (and which the Schottenstein firm does not appear to be making) is that hard copies of the documents are no longer available, that the only version of the documents remaining in existence is the electronic version, and that there is no way to retrieve the documents from the electronic database either without the erroneous date, with signatures, or with the original attachments.  If that is true, this issue should be discussed further between the parties.  In particular, they should discuss whether any of these irregularities would prevent a stipulation that the documents are

authentic and were actually signed or that whatever other documents which were purported to be attached to the produced documents were, in fact, attached when the documents were either sent or received.

### III.

Based upon the foregoing, Kegler, Brown's motion to compel (doc. #80) is granted as described above. If the parties, even with this order, cannot resolve the issue about producibility of the due diligence report, they shall contact the Court to request further proceedings. The other documents described above shall be produced in original form within 15 days or, alternatively, an affidavit shall be provided addressing the matters described above and verifying that no such production is possible.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge