```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF OHIO
                            EASTERN DIVISION
```

Kegler Brown Hill & Ritter,   :
et al.
          Plaintiffs,         :     Case No. 2:04-cv-0494
                                    Case No. 2:04-cv-0584

     v.                       :

Divine Tower International    :     JUDGE GRAHAM
Corporation, et al.
                              :
          Defendants.

## OPINION AND ORDER

On May 16, 2008, Kegler Brown filed a motion to compel third-party witness Schottenstein, Zox and Dunn (SZ & D) to produce documents that are the subject of a subpoena sent to that law firm. Other orders of this Court spell out the relationship between SZ & D and Apollo Real Estate Investment Fund IV, LP and the reason for the document subpoena. The specific documents that are the subject of this motion are any drafts or versions of a due diligence report prepared for Apollo in August or September, 1999; any documents that might have transmitted a copy of an agreement between Divine Tower International (DTI) and Deere Park, a company that had made a bridge loan to DTI; copies of that agreement in SZ & D's possession; and, at least for *in camera* inspection, any other documents being withheld from production by SZ & D on privilege grounds. The motion is fully briefed. For the following reasons, the motion will be granted.

I.

Kegler Brown's position can be stated fairly simply. SZ & D was one of the firms performing due diligence in connection with Apollo's investment in DTI. Apollo has claimed that Kegler Brown

withheld certain information from it which, had it been disclosed, would have materially influenced Apollo's investment decision.  At various times, Apollo has identified information about a bridge loan with Deere Park and two credit agreements with Key Bank as items it was not told about.  According to Kegler Brown, however, that information was disclosed to SZ & D as part of the due diligence process, and attorneys from SZ & D who have been deposed have confirmed that.  However, SZ & D has not produced any documents to back up that testimony even though such documents (such as the letter which Kegler Brown sent to SZ & D along with the Deere Park agreement) clearly exist.  Kegler Brown wants the Court to order SZ & D to produce these documents.

SZ & D also was involved in preparing a due diligence report.  Another law firm representing Apollo, Wilkie Farr, has produced one copy of that report dated August 27, 1999.  Kegler Brown believes other versions exist, including versions which refer to the Deere Park agreement.  It also wants the Court to order SZ & D to produce all of the versions or drafts of this report.  Finally, it notes that SZ & D has withheld a related document, a due diligence summary, which it believes to be wholly or partly a compilation of facts in unprivileged form.  It asks the Court to order production of this document, perhaps in redacted form if it does contain some attorney-client communications, and also asks the Court to conduct an *in camera* review of any other document that SZ & D has withheld on grounds of privilege.

II.

There have been a total of three responses filed to the motion.  Both SZ & D and Apollo filed an initial responsive brief, and SZ & D filed a surreply after Kegler Brown filed its reply memorandum.  The positions of SZ & D and Apollo can be summarized as follows.

-2-

Initially, both SZ & D and Apollo explained that as a result of someone's error, an entire disk containing copies of documents that existed in hard copy form in SZ & D's files was never reviewed for privileged documents nor produced to Kegler Brown. On the same day that they filed their responses (June 23), they produced the documents (which, according to the reply brief, included some 4,000 pages of information) to Kegler Brown. Apollo argued that everything else that was not being produced was privileged, as reflected on the privilege log. SZ & D noted in its response that it was bound to honor Apollo's claim of privilege with respect to any remaining documents. Neither of the responses addressed with any particularity the Deere Park documents, the Key Bank documents, or the due diligence report. SZ & D's surreply is similarly silent about specific documents, but it does take issue with Kegler Brown's arguments, made in the reply brief, that the explanation for the delay in producing these additional documents is simply fiction and that SZ & D and Apollo have been engaged in a campaign to hide information from Kegler Brown until it is too late for that information to be used productively in the discovery or trial preparation process.

Kegler Brown acknowledges that it has received additional documents and that they are responsive, in part, to the issues raised in the motion to compel. For example, additional documents about the Deere Park agreement were produced confirming SZ & D's receipt of the agreement. SZ & D also produced a copy of the due diligence report. That copy, however, is apparently a duplicate of the version produced by Wilkie Farr. Aside from its allegations of intentional misconduct on the part of SZ & D and Apollo, Kegler Brown contends in the reply that the document production is still incomplete because there is strong evidence that other versions of the due diligence report, including one dated September 30, 1999, were prepared, but no such versions

have been produced.  It also repeats its assertion that none of the claims of privilege advanced by SZ & D and Apollo should be trusted, and that the Court should therefore order an *in camera* inspection of all of those documents.

                                III.

The Court turns first to the question of whether the latest document production moots the motion to compel (other than the portion of the motion relating to *in camera* inspection).  On the basis of the record before the Court, it appears that there are still live issues that justify the issuance of an order granting the motion.

It is significant that, despite having had two opportunities to do so, SZ & D has not disputed that more than one version of the due diligence report was prepared.  Kegler Brown has produced evidence of at least one other version dated September 30, 1999, and there is circumstantial evidence in the form of indices suggesting that there may be additional versions.  At least one attorney from SZ & D has testified that it would have been standard practice to revise the report if new and material information, such as the Deere Park agreement, had been received after the initial version had been prepared.  The record does not contain any representation or sworn statement from either SZ & D or Apollo that these documents never existed, or that they have not been located despite a diligent search for them.  They would not seem to be the type of documents that either a law firm or a client would discard lightly.

In order to resolve this issue, the Court makes the following order.  Within fifteen days, SZ & D and Apollo shall review their records, including both records imaged to disk and the source documents themselves, to determine if either entity has additional copies or versions of the due diligence report, including but not limited to a version bearing the date of

September 30, 1999. They shall file with the Court, within twenty days, an affidavit or other sworn statement detailing the search which was conducted and the results of the search. If other versions are located, they shall be produced at the same time. If not, the affidavit or sworn statement shall affirmatively indicate that a good faith effort has been made to locate these documents and that to the best of SZ & D's and Apollo's knowledge, the documents no longer are located in their files. If the process followed to attempt to locate these documents turns up evidence about how they might have been lost or destroyed, that information must also be included in the sworn statement filed with the Court. This process should resolve any remaining issues about the due diligence report.

IV.

The next issue relates to *in camera* inspection. The Court had previously indicated it would review the due diligence summary if requested. Kegler Brown has so requested. That document shall therefore be submitted *ex parte* and under seal within ten days. It may be accompanied by an explanation from SZ & D and Apollo as to why all or portions of the document are privileged, if that is not apparent from the face of the document. If the Court determines that there are issues about the claim of privilege which should be briefed, and if they can be briefed without disclosing the contents of the document, the Court reserves the right to request such briefing.

The remaining documents present a different issue. Kegler Brown has not identified any particular claim of privilege that it believes to be suspect or deficient, but rather asserts that because of the totality of SZ & D's and Apollo's conduct in responding to document discovery, the Court should simply assume that their claims of privilege are not worthy of belief. While, as the following discussion reveals, the Court has concerns about

the way in which those entities responded to the document subpoena, the Court cannot conclude that this conduct justifies a wholesale review of privileged documents absent any evidence that any particular claim of privilege appears to be ill-founded. Thus, the Court declines to conduct that review on the basis of the present motion.

V.

Kegler Brown has requested that the Court award expenses and attorneys' fees in connection with the present motion. Basically, it claims that the delay in producing the due diligence report and the other documents which are the subject of the motion to compel, coupled with the doubtful explanation provided by SZ & D for that delay, warrant an award of fees and expenses.

The Court first notes that such relief was not requested in the motion to compel, but only in the reply brief. Ordinarily, the Court will not entertain such a request because placing it in the reply prevents the opposing party from responding to it. Here, SZ & D has filed a surreply which addresses, to some extent, the facts underlying the request for sanctions. Nevertheless, the issue has not been adequately briefed due to its inclusion in the reply, so the Court declines to award expenses.

That said, the Court does have concerns about the way in which the document production was handled by SZ & D and its former client Apollo. It appears that SZ & D may have passed some of the responsibility for complying with the document subpoena to counsel for Apollo and that neither party diligently searched for specific documents that had been requested by Kegler Brown for a long period of time, apparently assuming that Kegler Brown was simply incorrect in its assertions that, for example, SZ & D's copy or copies of the due diligence report had not been produced or that no documents relating to the Deere Park transaction had been made available. Certainly, more

communication between counsel, and a more diligent inquiry into why those documents had not been turned over to Kegler Brown, might have eliminated altogether the need for the instant motion to have been filed.  Although the instances when this Court awards sanctions in discovery matters are relatively few - a testament to the general good faith in which discovery is conducted in this district - the Court does not hesitate to award sanctions when one party's deliberate or careless inattention to its discovery obligations precipitates unnecessary motions practice.  That might be the case here even if SZ & D's explanation is completely accepted.  In the future, if one party's lack of attention to discovery forces the other to file a motion, the Court will seriously entertain a request for costs and fees simply in order to compensate the moving party for having to expend its time and money in order to focus the other side's attention on the deficiencies in its discovery responses.

VI.

For the foregoing reasons, the motion to compel (#130) is granted as set forth in the body of this order.  Those orders described in parts III and IV above are specifically incorporated herein.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge